UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LEVI JOSHUA WILLIAMS,<br>Plaintiff,<br>v.<br>CENTURION HEALTHCARE, et al.,<br>Defendants. | CAUSE NO. 3:25-CV-890-JTM-JEM |

OPINION AND ORDER

Levi Joshua Williams, a prisoner without a lawyer, filed a complaint alleging that he received constitutionally inadequate mental health care at the Miami Correctional Facility. (DE # 1.) "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is

"serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed [and] decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005).

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). Inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Furthermore, negligence does not state a claim. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (negligence and medical malpractice do not constitute deliberate indifference).

Williams alleges that, over an eleven-month period, he made multiple attempts to get medication for a mental health condition. At the time he filed his complaint, he estimates he had filed a dozen requests for mental health care, but he only received

responses to two of his requests.[1] The responses both asked for additional information about Williams' mental health concerns.

The first of these two health care requests was filed on July 10, 2025. In this request, Williams indicated he needs to get on medication. It was returned saying that he needed to be more specific. Williams has not provided a copy of this response or identified who responded to this request.

On July 13, 2025, Williams submitted another request for mental health care. (DE # 1-1 at 3.) In this request, he writes the following:

> I will not put my personal stuff on here. It's my right. If you refuse me again to be seen and put on meds this is just going to add to my claim on MCF health care. I NEED to be seen to be put back on meds.

*Id.* On July 21, 2025, he had not yet been seen and he filed a grievance regarding mental health care.

On July 23, 2025, Williams received a response to his July 13, 2025, health care request form. He was told to "[p]lease specify your mental health concerns – so an appropriate appointment may be scheduled." *Id.* It is again unclear who signed the response. Williams does not allege that he provided any additional information in response to the request.[2] He did, however, speak to Nurse Sherry about the response,

---

[1] Williams does not provide any further information about the contents or timing of his other requests for mental health care.

[2] As already noted, Williams cannot demand specific care. *Walker*, 940 F.3d 954, 965 (7th Cir. 2019). That includes demanding medication to treat an alleged mental health problem not described with any degree of particularity. While Williams is of course free to withhold information about the nature of his mental health concerns, he cannot claim defendants were deliberately indifferent to a serious medical need when he has not described his symptoms or their impact on him. In other words, it was not unreasonable for the mental health staff to expect Williams to describe the nature of the symptoms that caused him to seek care prior to scheduling an appointment for him with a mental health provider.

and he alleges that she told him that saying he needs to be put on meds should be enough.[3] The July 21, 2025, grievance was returned unprocessed on August 13, 2025, because the grievance specialist was waiting on a response from staff. (DE # 1-1 at 4.)

Williams submitted another grievance on September 10, 2025. *Id.* at 2. A fire had broken out near Williams' cell on September 10, 2025, and he indicated this was traumatic for him because he had been involved in a house fire. He asked to see someone in mental health due to the trauma. He received a response the same day indicating that the grievance specialist was waiting for a response from staff.[4] *Id.* at 1.

In addition to the grievances and health care requests outlined above, Williams reached out to several other individuals in an attempt to obtain mental health care. On an unspecified date, Williams asked Sgt. McKibble if he could see a mental health provider. He contacted someone and then told Williams to fill out a request form and they would see him when they could, if he met the criteria to be seen. He also wrote to Mrs. Ivers on an unspecified date about not being seen, but it is unclear what information he provided Mrs. Ivers. He never heard back from Mrs. Ivers. He asked Nurse Sherry at some point about not hearing back and she explained that all she does is put the request in the proper mailbox. It cannot be plausible inferred from these allegations that any of these defendants were deliberately indifferent to Williams'

---

[3] It is unclear if Williams is suing Nurse Sherry for providing this advice. To the extent that may have been Williams' intention, he cannot proceed. At most, Nurse Sherr's comment shows negligence, as her advice was contrary to the instructions Williams had been provided from the mental health staff member who responded to his health care request.

[4] He filed another grievance on October 2, 2025. (DE # 1-1 at 6.) The October 2, 2025, grievance concerned another fire on Williams' range, but he does not ask for mental health care in that grievance.

serious mental health need. Therefore, he may not proceed against Sgt. McKibble, Mrs. Ivers, or Nurse Sherry.

On an unspecified date, Williams put pieces of blanket around his neck and posted notes in his window saying he was going to kill himself. He claims Officer Molina and Officer Sutton removed the notes and walked off. Williams does not indicate if he spoke with Officer Molina or Officer Sutton, nor does he provide any other details about his interactions with Officer Molina and Officer Sutton. Without additional facts, these allegations are too vague to state a claim against Officer Molina or Officer Sutton. *See, e.g., Taha v. Intl. Bhd. of Teamsters, Loc. 781*, 947 F.3d 464, 469 (7th Cir. 2020) ("[A] complaint must plead more than an unadorned, the-defendant-unlawfully-harmed-me accusation. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (internal quotations marks and citations omitted)); *Schillinger v. Kiley*, 954 F.3d 990, 994 (7th Cir. 2020) ("A plaintiff must include adequate factual detail to lift his claims from mere speculative possibility to plausibility."); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

On August 29, 2025, Williams put blanket strings around his neck in front of Sgt. Buzzard. This resulted in Williams being maced[5] and put on suicide watch and strip cell

[5] Williams does not indicate if Sgt. Buzzard is the individual that sprayed him with mace or if it was another officer. He also does not provide any details about what happened immediately before he was sprayed with mace. Therefore, to the extent that Williams may have intended to allege an excessive force claim against Sgt. Buzzard, he has not alleged facts that permit a plausible inference that Sgt. Buzzard's actions violated the Eighth Amendment's prohibition against excessive force.

status pending an interview with mental health. Williams is suing Sgt. Buzzard, but it is unclear what Sgt. Buzzard did that Williams believes violated his rights. Sgt. Buzzard responded to the threat and Williams was placed on suicide watch – this does not suggest that Sgt. Buzzard was deliberately indifferent to Williams' mental health needs.

After 72 hours, Mrs. Fairchild came to see Williams. Williams denied any plans to harm himself but indicated he has thoughts about hurting others and hears voices asking him to help them hurt people. Williams does not allege any facts from which it could be plausible inferred that Mrs. Fairchild was deliberately indifferent to his serious mental health needs.

Williams also saw Dr. Ballard by video. Dr. Ballard said he would have Williams put "on the count letter" and he would see him the following week, but that appointment did not take place. Mrs. Fairchild instead told Williams that mental health would see him in thirty days. Williams saw a woman by video approximately thirty days later. She indicated she would tell her boss her concerns and that she believed Williams needed to see the doctor. Three weeks passed without any additional appointments. If substantiated these allegations could, at best, demonstrate negligence, but they do not allow a plausible inference that either Dr. Ballard or Mrs. Fairchild were deliberately indifferent to Willliams' serious mental health needs.

A month after Williams was placed on suicide watch he was written up for an offense related to the incident where he engaged in self-harm. It is unclear who wrote him up, what offense he was charged with, or if he was found guilty of the charge. To the extent Williams intended to sue based on being written up, his allegations are far

too vague to state a claim. Williams also names Lt. James Heater as a defendant, but he is not mentioned in the body of Williams' complaint.

Finally, Williams has named Centurion Healthcare as a defendant. A private company performing a public function can be sued under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), but such entities "cannot be held liable for the unconstitutional acts of their employees unless those acts were carried out pursuant to an official custom or policy." *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008) (citations omitted). The purpose of this requirement is to "distinguish between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021). "At the pleading stage . . . a plaintiff pursuing [a *Monell*] theory must allege facts that permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017). Williams has not alleged that his medical treatment was inadequate due to a widespread policy, custom, or practice of Centurion. Therefore, he may not proceed against Centurion.

Williams' complaint does not state a claim for which relief can be granted. The amended complaint is short on facts, dates, and specifics about the medical treatment he has received. Based on what it does say, it is not plausible to infer that he is not receiving constitutionally adequate medical care. A complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft,* 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (quotation marks, citations and footnote omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft*, 556 U.S. at 679 (quotation marks and brackets omitted). Thus, "a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened . . . that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original).

If Williams believes he can state a claim based on (and consistent with) the events described in this complaint, he may file an amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. He needs to write the word "Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form.

For these reasons, the court:

(1) GRANTS Levi Joshua Williams until **October 30, 2026**, to file an amended complaint; and

(2) CAUTIONS Levi Joshua Williams that, if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

**SO ORDERED.**

Date: October 1, 2026

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT